**PELTON GRAHAM LLC**
Brent E. Pelton (BP 1055)
Taylor B. Graham (TG 9607)
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700
www.PeltonGraham.com

*Attorneys for Plaintiffs and the putative*
*FLSA Collective and Class*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **LUIS ESCOBAR GONZALEZ and RENE GALLEGOS, Individually and on Behalf of All Others Similarly Situated,**<br><br>                    **Plaintiffs,**<br><br>-against-<br><br>**MONTAUK PLUMBING & HEATING LLC, MONTAUK PLUMBING & HEATING SUPPLY CORP., and JOHN LOTITO, Jointly and Severally,**<br><br>                    **Defendants.** | **CLASS & COLLECTIVE ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiffs Luis Escobar Gonzalez and Rene Gallegos (the "Plaintiffs"), individually and on behalf of all others similarly situated, as class and collective representatives, upon personal knowledge as to themselves and upon information and belief as to other matters, allege as follows:

### NATURE OF THE ACTION

1.      Plaintiffs are former plumbers at Defendants' plumbing and heating company based in Montauk, New York. Throughout the relevant time period, Plaintiffs and Defendants' other

plumber employees did not receive overtime premiums for all hours worked over forty (40) in a given workweek.

2.      Defendants' policies and practices of paying Plaintiffs straight-time hourly rates for all hours worked, resulted in systematic underpayment of wages to Plaintiffs and Defendants' other plumber employees, in violation of federal and state wage laws.

3.      Additionally, Defendants failed to provide Plaintiffs with a wage notice at hiring, or proper and complete wage statements along with their weekly wage payments that accounted for all hours worked each pay period or their proper overtime premium rate of pay.

4.      Plaintiffs bring this action to recover unpaid overtime premiums owed to them pursuant to both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the New York Labor Law ("NYLL"), §§ 650 *et seq.* Plaintiffs also bring claims for failure to provide proper wage notices and wage statements, pursuant to NYLL §§ 190 *et seq.* and the supporting regulations.

5.      Plaintiffs bring their FLSA claims on behalf of themselves and all other similarly situated employees of Defendants and their NYLL claims on behalf of themselves and a Federal Rules of Civil Procedure 23 class of employee plumbers who worked for Defendants during the NYLL limitations period.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337, and 1343, and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.  In addition, this Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

7.    Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district and Defendants' business is located in this district.

8.    This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

**Plaintiffs:**

9.    <u>Plaintiff Luis Escobar Gonzalez</u> ("Escobar") was, at all relevant times, an adult individual residing in Suffolk County, New York.

10.    <u>Plaintiff Rene Gallegos</u> ("Gallegos") was, at all relevant times, an adult individual residing in Suffolk County, New York.

11.    Throughout the relevant time period, Plaintiffs performed work for Defendants throughout Long Island, New York.

12.    Plaintiffs consent in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b), and their respective consent forms are attached hereto.

**Defendants:**

13.    <u>Defendant Montauk Plumbing & Heating LLC</u> ("Montauk Plumbing & Heating") is an active New York limited liability company registered with the DOS on June 14, 2011 that operates from 213 Edgemere Street, Montauk, New York 11954.

14.    <u>Defendant Montauk Plumbing & Heating Supply Corp.</u> ("Montauk Plumbing & Heating Supply", and together with Montauk Plumbing & Heating, "Montauk Plumbing" or the "Corporate Defendants") is an active New York corporation registered on February 28, 2019, with

a DOS Process address at 213 Edgemere Street, Montauk, New York 11954.

15.     The Corporate Defendants are interrelated and unified.

16.     The Corporate Defendants are owned, operated, and managed by the same individuals at the same corporate office, utilizing the same corporate practices and policies.

17.     Upon information and belief, the Corporate Defendants were used interchangeably to pay Plaintiffs and Defendants' other employees their wages, including cash wage payments.

18.     Upon information and belief, Defendant John Lotito ("Lotito" or the "Individual Defendant" and, collectively with the Corporate Defendants, the "Defendants") has been an owner, operator and manager of the Corporate Defendants since in or around 2017 through the present. (*See* https://behindthehedges.com/master-craftsman-john-lotito-of-montauk-plumbing-heating/).

19.     Upon information and belief, the Individual Defendant maintains operational control over and manages the Corporate Defendants by supervising, issuing, and determining the wages and compensation of employees, establishing the company's policies with respect to payroll and employees' work schedules and job assignments, maintaining employee records, scheduling and leading employee annual reviews, and through possessing and exercising the authority to hire and fire employees, including Plaintiffs.

20.     The Individual Defendant participated in the day-to-day operations of the Corporate Defendants and acted intentionally in his direction and control of Plaintiffs and the Defendants' other similarly situated employees and are each an "employer" pursuant to the FLSA, 29 U.S.C. § 203(d), 29 C.F.R. § 791.2, as well as the NYLL § 2 and the regulations thereunder, and is jointly and severally liable with the Corporate Defendants.

21.     At all relevant times, Defendants have been and continue to be employers engaged

in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

22.     At all relevant times, Defendants employed, and/or continue to jointly employ, Plaintiffs and each of the Collective Action members within the meaning of the FLSA.

23.     At all relevant times, Plaintiffs, the opt-in plaintiffs and the Class Members were employed by Defendants within the meaning of the NYLL, §§ 2 and 651.

24.     Upon information and belief, at all relevant times, the Corporate Defendants have had gross revenues in excess of $500,000.00.

## FLSA COLLECTIVE ACTION ALLEGATIONS

25.     Pursuant to 29 U.S.C. §§ 206, 207 & 216(b), Plaintiff Escobar brings his First Cause of Action as a collective action under the FLSA on behalf of himself and the following collective:

> All persons employed by Defendants at any time since December 7, 2018 and through the entry of judgment in this case (the "Collective Action Period") who worked as plumbers or plumbers' assistants for Montauk Plumbing (the "Collective Action Members").

26.     A collective action is appropriate in this circumstance because Plaintiff Escobar and the Collective Action Members are similarly situated, in that they were all subjected to Defendants' illegal policy of failing to pay proper overtime premiums for all work performed in excess of forty (40) hours each week.  As a result of this policy, Plaintiff Escobar and the Collective Action Members did not receive overtime premium payments for all hours worked in excess of forty (40) hours per week.

27.     Plaintiff Escobar and the Collective Action Members have substantially similar job duties and responsibilities, were paid flat hourly rates for all hours worked, and are paid pursuant to a similar, if not the same, payment structure.

## FED. R. CIV. P. 23 CLASS ACTION ALLEGATIONS

28.     Pursuant to the NYLL, Plaintiffs brings their Second through Fourth Causes of Action under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the following class:

> All persons employed by Defendants in New York at any time since April 23, 2015 and through the entry of judgment in this case (the "Class Period") who worked as plumbers or plumbers' assistants for Montauk Plumbing (the "Class Members").

29.     The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under Fed. R. Civ. P. 23.

30.     The Class Members are so numerous that joinder of all members is impracticable. Although the precise number of Class Members is unknown to Plaintiffs, the facts on which the calculation of that number can be based are presently within the sole control of Defendants.

31.     Upon information and belief, there are well in excess of forty (40) Class Members.

32.     Common questions of law and fact exist as to all Class Members and predominate over any questions solely affecting the individual members of the Class.  Such common questions will determine Defendants' liability to all (or nearly all) Class Members. These common questions include, but are not limited to:

a.   whether Defendants employed Plaintiffs and the Class Members within the meaning of the NYLL;

b.   whether Defendants failed to keep true and accurate time records for all hours worked by Plaintiffs and the Class Members;

6

c. whether Defendants failed and/or refused to pay Plaintiffs and the Class Members overtime premiums for all hours worked in excess of forty (40) hours per workweek;

d. whether Defendants failed to provide Plaintiffs and the Class Members with a proper statement of wages with every wage payment as required by the NYLL;

e. whether Defendants failed to provide wage notices to Plaintiffs and the Class Members at the beginning of their employment and/or on February 1 of each year and/or when their wage rate changed, as required by the NYLL;

f. whether Defendants' failure to properly pay Plaintiffs and the Class Members lacked a good faith basis; and

g. whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory damages, liquidated damages, interest, costs and disbursements and attorneys' fees.

33.     <u>Plaintiffs' claims are typical of the Class Members' claims</u>.  Plaintiffs, like all Class Members, were employed by Defendants as plumbers and/or plumber assistants and were subject to Defendants' corporate policies, including but not limited to payroll policies.  Plaintiffs, like all Class Members, were, *inter alia*, not paid overtime premium pay for all hours worked over forty (40) hours in a given workweek, including time spent gathering materials at Defendants' shop and traveling to/from the shop and job sites; and did not receive proper wage statements or wage notices. If Defendants are liable to Plaintiffs for the claims enumerated in this Complaint, they are also liable to all Class Members.

34.     <u>Plaintiffs and their Counsel will fairly and adequately represent the Class</u>. There are no conflicts between Plaintiffs and the Class Members, and Plaintiffs bring this lawsuit out of

a desire to help all Class Members, not merely out of a desire to recover their own damages.

35.     Plaintiffs' counsel are experienced class action litigators who are well-prepared to represent the interests of the Class Members.

36.     <u>A class action is superior to other available methods for the fair and efficient adjudication of this litigation</u>.

37.     Defendants are sophisticated parties with substantial resources. The individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against the Corporate Defendants.  The individual members of the Class have no interest or capacity to bring separate actions; Plaintiffs are unaware of any other litigation concerning this controversy; and there are no likely difficulties that will arise in managing the class action.

## STATEMENT OF FACTS

**Defendants' Business**

38.     As advertised on its website, Montauk Plumbing is a full-service plumbing and heating company based in Montauk, New York, servicing residential and commercial properties, new construction, fire sprinklers, among others. (*See* https://montaukplumbing.net/).

39.     Upon information and belief, Defendants operate at least twenty-five (25) vehicles and employ at least thirty (30) plumbers at any one time.

40.     Upon information and belief, Montauk Plumbing operates primarily from its shop location at 213 Edgemere Street, Montauk, NY 11954, but also has two (2) additional shop locations, one which is located at 269 Butter Ln, Ste 4, Bridgehampton, NY 11932-4101, and another in Southampton, New York.

41.     Upon information and belief, the Individual Defendant is the current owner,

operator, and manager of Montauk Plumbing.

42.     Upon information and belief, the Individual Defendant takes an active role in the management, operation, and supervision of the Corporate Defendants' course of business, communicating, and exercising his authority to pay employees.

43.     Upon information and belief, at all times relevant, the Individual Defendant has held the power and authority to hire and fire employees, set their wages, retain time and/or wage records, and otherwise control the terms and conditions of their employment.

**Plaintiffs' Work for Defendants**

44.     **Plaintiff Luis Escobar Gonzalez** was employed by Defendants as a plumber from in or around 2017 through approximately February 9, 2021 (the "Escobar Employment Period").

45.     Throughout the Escobar Employment Period, Escobar performed plumbing work at several of Defendants' residential and commercial renovation projects throughout Suffolk County, Long Island. At each job site, Escobar's work was supervised Defendants' senior employees and supervisors. When no supervisor was assigned to a given project, an individual known to Plaintiff Escobar as "John Kelly" would visit and inspect the work performed by Escobar and Defendants' other employees.

46.     From the start of the Escobar Employment Period until in or around March 2020, Escobar was scheduled to work five (5) days per week, Monday through Friday, from approximately 6:00 or 6:30 a.m. to 6:00 p.m., and during certain shifts until 5:00 p.m., for a total of between approximately fifty-seven and a half to sixty-nine (57.5 - 69) hours per week, excluding time spent at Defendants' shop and travel time from the shop to the job site or between job sites if he was scheduled for multiple job sites during a given shift. For certain shifts during the summer

months which was typically considered a slower business season, Escobar recalls working shorter shifts at the job sites Monday to Friday from approximately 7:00 a.m. until 4:30 p.m., for a total of approximately forty-seven and a half (47.5) hours per week.

47.     From in or around March 2020 until the end of the Escobar Employment Period, Escobar's weekday schedule was reduced to Monday to Friday from 7:00 a.m. to 4:30 p.m. However, at least between three to four (3-4) times per month, primarily during the Winter season, Escobar was also scheduled to work Saturday shifts from approximately 7:00 a.m. to 3:30 p.m. or 4:30 p.m., depending on work demands, for a total of between approximately forty-seven and a half to fifty-seven (47.5-57) hours per week, excluding travel time and time spent gathering and storing materials at Defendants' shop, as explained below.

48.     During the Escobar Employment Period, Escobar was required to arrive at Defendants' shop typically between 5:00 a.m. and 6:30 a.m. (depending on what time he had to report to each job site to begin his scheduled shift, as well as the distance from the shop to the job site) to gather materials and load the truck with materials needed for the day. During approximately the last eighteen (18) months of his employment, Escobar was required to also report to the shop after the end of his shift to drop off Defendants' truck, which typically took anywhere between one (1) to one and a half (1.5) hours depending on the job site location, including the travel time from the job site to the shop plus time spent at the shop storing the truck and materials. At no point was Escobar compensated for this additional travel time and time spent gathering and dropping off materials at the shop, nor was Escobar permitted to track this time.

49.     Throughout the Escobar Employment Period, Escobar was typically assigned to perform work at one (1) job site per shift, along with between (2) to three (3) other employees who

performed work for Defendants as plumbers. During certain shifts, however, Escobar was assigned to two (2) or three (3) job sites per shift, all which were located in Suffolk County, New York.

50.     From the start of the Escobar Employment Period until approximately in or around September 2019, Escobar spent on average between approximately five (5) to ten (10) hours per week in travel time plus time spent gathering materials and loading the truck prior to the start of his shift, for which he received no compensation. From approximately September 2019 until the end of the Escobar Employment Period, Escobar spent on average between ten (10) and fifteen (15) hours per week in travel time, as well as loading/unloading the trucks at Defendants' shop both. As stated above, Escobar was not permitted to track this time and therefore was not compensated by Defendants for this additional time worked outside of the job sites.

51.     Throughout the Escobar Employment Period, Escobar was permitted to take a thirty (30) minute meal break per shift.

52.     Throughout the Escobar Employment Period, Escobar received his wages in a combination of payroll check and cash payments. Escobar was typically provided with a weekly payroll check for approximately forty (40) hours, with the additional hours paid in cash at straight-time rates.  With the payroll check, Escobar received a paystub that listed fewer hours than he worked during the week, and which excluded time spent at Defendants' shop loading materials onto the trucks and time spent traveling from Defendants' shop to the job sites. Although Escobar's paystubs typically reflected up to a forty (40) hour workweek, during certain payroll periods Escobar noticed that his paystubs listed approximately two to four (2-4) hours of overtime, even though Escobar normally worked significantly more hours in excess of forty (40), as indicated above.

53.     From the start of the Escobar Employment Period until in or around late 2020, Escobar typically received the portion of his wages paid in cash directly from Defendant Lotito, or from an employee of Defendants who worked in their main office in a secretarial/administrative position, and at times from a supervisor known as "Jimmy Kelly". From in or around 2020 until the end the Escobar Employment Period, Escobar was required to pick up his cash wages at a dropbox-like station near Defendants' shop, using a key and dropbox number provided by Defendants.

54.     At the start of the Escobar Employment Period until in or around 2018,  Escobar was paid sixteen dollars ($16.00) per hour, which was then increased to eighteen dollars ($18.00) per hour. From in or around early 2019 until mid-2019, Escobar was paid twenty dollars ($20.00) per hour, which then increased to twenty-two dollars ($22.00) per hour. At the end of 2020, Escobar's hourly rate was increased to twenty-seven dollars ($27.00) per hour, which he continued to receive until the end of his employment period.

55.     Throughout the Escobar Employment Period, Escobar was required to clock-in upon arriving at the job site and clock-out when departing the job site using two different phone timekeeping applications called "ClockShark" and "ExakTime".

56.     Escobar resigned from his position with Defendants on or about February 9, 2021, due to Defendants' refusal to pay him wages for two (2) weeks of employment. Although Plaintiff attempted multiple times to recover his wages for these weeks, the Individual Defendant adamantly refused and ultimately ceased responding to Escobar's communications, and to date, Escobar has not been paid for those final two (2) weeks of employment.

57.     **Plaintiff Rene Gallegos** was employed by Defendants as a plumber from in or

around early 2017 until approximately February 2018 (the "Gallegos Employment Period").

58.     During the Gallegos Employment Period, Gallegos performed plumbing services at several renovation properties, including but not limited to, the "Gurney's" renovations project, Duryea's Restaurant & Bar, The Sea Breeze Inn Hotel, and other job sites in Suffolk County.

59.     Throughout the Gallegos Employment Period, Gallegos was scheduled to work six (6) days per week, from Monday through Saturday, from approximately 7:00 or 8:00 a.m. to 4:00 p.m., for a total of between approximately forty-eight (48) to fifty-four (54) hours per week, and frequently more hours.

60.     From approximately late-April or early-May until August of each year, Gallegos typically was scheduled for longer shifts of eleven to thirteen (11-13) hours per day, often from 6:00 a.m. until 9:00 p.m. and sometimes later, for a total of approximately seventy-eight (78) hours per week, not including travel time or pre-shift work at Defendants' shop. In particular, while performing work at the Sea Breeze Inn project, Gallegos  worked from approximately 5:00 a.m. to 8:00 p.m., a total of thirteen (13)-hour shifts, including time spent at the yard and traveling to the job site. At another job site, Gallegos recalls working from 6:00 a.m. until approximately midnight (12:00 a.m.), since there were some complications with the structures at that site and employees were told that the deadline for completion of the project could not be delayed. Even after this long shift, Gallegos was still required to return to Defendants' shop to drop off the truck.

61.     Prior to and at the end of his scheduled shifts, Gallegos was required to report each day to Defendants' shop located at 213 Edgemere Street, Montauk, New York near the Long Island Railroad Montauk station. Gallegos typically spent between thirty (30) minutes to one (1)-hour per day at the shop loading materials at the start of his shift. After loading the materials, Gallegos

spent between approximately thirty and forty-five (30-45) minutes traveling between the shop and the job site at the start and end of his shift. In total, throughout the Gallegos Employment Period, Gallegos spent on average between approximately six (6) to nine (9) hours per week in combined travel time and time spent gathering and loading materials on the truck in the morning and dropping off the truck at the end of each shift, and sometimes more. Specifically, for new construction residential or commercial projects which required heavier equipment than other projects, Gallegos was instructed by Defendant Lotito and supervisors to arrive at Defendants' shop as early as 5:00 a.m., in order to pick up all necessary materials, prior to traveling to the job site to begin his regular scheduled shift.

62.    Throughout the Gallegos Employment Period, Gallegos was permitted to take a thirty (30) minute meal break per shift.

63.    Throughout the Gallegos Employment Period, Gallegos was paid approximately twenty-five dollars ($25.00) per hour via payroll check for all hours for which he was compensated, including overtime hours. As such, Gallegos was not paid overtime premiums for hours worked in excess of forty (40) hours per week.

64.    Plaintiff Gallegos received his wages entirely via check and at no point did he receive any portion of his wages in cash. Although Plaintiff Gallegos recalls that he was permitted to track his arrival and departure times at Defendants' shop at the start and end of his workday, Gallegos was told by Defendant Lotito that he would be paid for all hours worked including the time spent at the shop at his regular (straight-time) hourly rate.

65.    In or around December 2017, during his annual review with Defendant Lotito, Gallegos inquired regarding overtime pay as well as paid vacation days, which he was not

permitted to take up to that point. Gallegos was told by Defendant Lotito that he would not be able to pay him overtime hours at a rate of time and a half since Gallegos was already one of his highest paid employees.

66.     At the start of the Gallegos Employment Period, Gallegos was required to email his hours worked per shift to one of the Defendants' administrative staff members.

67.     Excepting the few payroll periods when Plaintiff Escobar received some overtime pay, Defendants paid Plaintiffs, and its other employees who worked as plumbers or plumbers' assistants, straight-time hourly rates for all hours worked. Through personal conversations with other employees of Defendants who worked as plumbers' or plumbers' assistants, Plaintiffs are aware that other employees were paid straight-time hourly rates either entirely through check or through a combination of check and cash payments, with no overtime premiums for hours worked over forty (40) in a given workweek.

68.     Plaintiffs did not receive any wage notice when they were hired or at any point during their employment with Defendants.

69.     Although Defendants provided them with paystubs, these paystubs did not show an accurate accounting of all hours they worked during each workweek. Therefore, Defendants have not provided Plaintiffs or Class Members with proper statement of wages containing the dates of work covered by their wage payments; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the complete and total number of hours worked, including overtime hours worked if applicable; deductions; and net wages, as required by the NYLL

regulations.

70.     Plaintiffs and the Class Members were all paid pursuant to the same corporate policies of Defendants, including failing to pay the legally required overtime premiums for all hours worked in excess of forty (40) per week.

## FIRST CAUSE OF ACTION
## FAIR LABOR STANDARDS ACT – UNPAID OVERTIME
### (Brought on Behalf of Plaintiff Escobar and the Collective Action Members)

71.     Plaintiff Escobar, on behalf of himself and the Collective Action Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

72.     By failing to pay Plaintiff Escobar overtime at a rate not less than one and one-half (1.5) times the regular rate of pay for all work performed in excess of 40 hours per week, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 et seq., including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

73.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

74.     Defendants' failure to pay proper overtime pay caused Plaintiff Escobar and the Collective Action Members to suffer loss of wages and interest thereon. Plaintiff Escobar and the Collective Action Members are entitled to recover from Defendants their unpaid overtime premium compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

**SECOND CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID OVERTIME**
**(Brought on Behalf of Plaintiffs and the Class Members)**

75.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

76.     Defendants willfully violated Plaintiffs' and the Class Members' rights by failing to pay overtime compensation at a rate of not less than one and one-half (1.5) times the regular rate of pay for all hours worked in excess of 40 each week, in violation of the NYLL and regulations promulgated thereunder.

77.     Defendants' failure to pay overtime premium compensation caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon.  Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

**THIRD CAUSE OF ACTION**
**NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE NOTICES**
**(Brought on Behalf of Plaintiffs and the Class Members)**

78.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

79.     Defendants have willfully failed to supply Plaintiffs and the Class Members notice as required by Article 6, § 195(1), in English or in the language identified by Plaintiffs and the Class Members as their primary language, containing Plaintiffs' and Class Members' rate or rates

of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay, if applicable;  the regular pay day designated by the employer in accordance with the NYLL, Article 6, § 191; the name of the employer; or any "doing business as" names used by the employer' the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

80.     Due to Defendants' violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendants fifty dollars ($50) per employee for each day that the violations occurred or continue to occur, up to a maximum of five thousand dollars ($5,000) per employee, as provided for by NYLL, Article 6, §§ 190, et seq., liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## FOURTH CAUSE OF ACTION
## <u>NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE STATEMENTS</u>
### (Brought on Behalf of Plaintiffs and the Class Members)

81.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

82.     Defendants have willfully failed to supply Plaintiffs and Class Members with an accurate statement of wages as required by NYLL, Article 6, § 195(3), containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day,

week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

83.     Due to Defendants' violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendants two hundred and fifty dollars ($250) per employee for each day that the violations occurred or continue to occur, up to a maximum of five thousand dollars ($5,000) per employee, as provided for by NYLL, Article 6, §§ 190 et seq., liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs, on behalf of themselves and all other similarly situated Collective Action Members and Class Members, respectfully requests that this Court grant the following relief:

a.      Designation of this action as a collective action on behalf of the Collective Action Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiff Escobar and his counsel to represent the Collective Action Members;

b.      Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of the Class Members and appointing Plaintiffs and their counsel to represent the Class;

c.      An order tolling the statute of limitations;

d.      A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

e.      An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

f.      An award of compensatory damages as a result of Defendants' failure to pay overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

g.      An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay proper overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

h.      Fifty dollars ($50) per Plaintiffs and each of the Class Members for each day that the violations of NYLL, Article 6 § 195(1) occurred or continue to occur, up to a maximum of five thousand dollars ($5,000) per Plaintiffs and each of the Class Members as provided for by NYLL, Article 6 § 198(1)-b;

i.      Two hundred and fifty dollars ($250) per Plaintiffs and each of the Class Members for each day that the violations of NYLL, Article 6 § 195(3) occurred or continue to occur, up to a maximum of five thousand dollars ($5,000) per Plaintiffs and each of the Class Members as provided for by NYLL, Article 6 § 198(1)-d;

j.      An award of prejudgment and post-judgment interest;

k.      An award of costs and expenses of this action together with reasonable attorneys'

and expert fees; and

l.      Such other and further relief as this Court deems just and proper.

### <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial

by jury on all questions of fact raised by the complaint.


Dated:  New York, New York
        December 7, 2021

                                Respectfully submitted,

                                **PELTON GRAHAM LLC**


                        By: _____
                                Brent E. Pelton, Esq.
                                Pelton @PeltonGraham.com
                                Taylor B. Graham, Esq.
                                Graham@PeltonGraham.com
                                111 Broadway, Suite 1503
                                New York, New York 10006
                                Telephone: (212) 385-9700
                                Facsimile: (212) 385-0800

                                *Attorneys for Plaintiffs and the putative*
                                *FLSA Collective and Class*


21

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Montauk Plumbing & Heating LLC and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me overtime wages and minimum wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

Luis Escobar

————————————————
3935E21128D4476

Signature

Luis Escobar Gonzalez

————————————————
Printed Name

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal en mi nombre y representación en contra de Montauk Plumbing & Heating LLC y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados para que me sean pagadas las horas extras y los salarios mínimos tal como lo requieren las normas estatales y/o federales e igualmente autorizo la presentación de este consentimiento en la acción(es) con el fin de debatir la conducta ilegal. Yo autorizo ser nombrado como demandante representativo en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que, si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos inicialmente de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.

Luis Escobar

————————————————
3935E21128D4476

Firma

Luis Escobar Gonzalez

————————————————
Nombre Escrito

This is a complete and accurate translation of the English "Consent to Become a Party Plaintiff" from above.

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Montauk Plumbing & Heating LLC and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me overtime wages and minimum wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

_____        Rene Gallegos
Signature                               _____
                                        Printed Name

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal en mi nombre y representación en contra de Montauk Plumbing & Heating LLC y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados para que me sean pagados las horas extras y los salarios mínimos tal como lo requieren las normas estatales y/o federales e igualmente autorizo la presentación de este consentimiento en la acción(es) con el fin de debatir la conducta ilegal. Yo autorizo ser nombrado como demandante representativo en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que, si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos inicialmente de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.

_____        Rene Gallegos
Firma                                   _____
                                        Nombre Escrito

This is a complete and accurate translation of the English "Consent to Become a Party Plaintiff" from above.